# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**NISSAN NORTH AMERICA, Inc.,**

           Plaintiff,

**Case No. 08-C-584**

    -vs-

**ANDREW CHEVROLET, Inc.,**
**d/b/a ANDREW NISSAN,**

           Defendant.

## DECISION AND ORDER

The above-captioned matter relates to a motor vehicle dealership arrangement between Nissan North America, Inc. ("Nissan," the manufacturer) and Andrew Chevrolet, Inc. ("Andrew," the dealership). Andrew moves to dismiss or stay in deference to an ongoing administrative action before the Wisconsin Division of Hearings and Appeals. The administrative action was filed by Andrew several months before Nissan filed the instant action for declaratory relief in federal court. For the reasons that follow, Andrew's motion is granted and this matter is stayed pursuant to the abstention principles in *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) and *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942) ("*Wilton/Brillhart*").

### BACKGROUND

Nissan is an automobile manufacturer incorporated in California, with its principal place of business in Nashville, Tennessee. Andrew is an automobile dealer incorporated in

Wisconsin with its principal place of business in Glendale, Wisconsin. Nissan and Andrew executed a dealership agreement in 1996.

On or about December 21, 2006, Andrew commenced an action with the Division of Hearing and Appeals, captioned *Andrew Chevrolet, Inc. d/b/a Andrew Nissan v. Nissan North America, Inc.*, Case No. TR-06-0058 (the "Original DHA Action"). In the Original DHA Action, Andrew requested a hearing pursuant to Wis. Stats. Ch. 218 (the Wisconsin Motor Vehicle Dealer Law, "WMVDL") on Nissan's intent to terminate the Dealer Agreement and Nissan's denial of its relocation proposal. Just prior to the commencement of the hearing in the Original DHA Action, the parties entered into a Settlement Agreement. By a letter dated October 24, 2007, and pursuant to the terms of the Settlement Agreement, Andrew voluntarily terminated its dealer agreement, with such termination to be effective no later than April 2, 2008. Andrew ceased being a Nissan dealer on or about March 31, 2008.

Section I of the Settlement Agreement provided Andrew the opportunity, with restrictions, to submit a "Proposed Action," that is, to propose a transfer of its Nissan dealership assets (in the form of an asset purchase agreement) from Andrew to a proposed buyer. Under the terms of the Settlement Agreement, Andrew agreed to certain limitations on its ability to propose a transfer of its right in the Dealer Agreement. In the event that Nissan disapproved a Proposed Action, the Settlement Agreement allowed Andrew to protest Nissan's disapproval in accordance with Wis. Stat. § 218.0134(2)(c), but only if the

"Proposed Action [was] submitted in accordance with this Settlement Agreement." Andrew had until January 15, 2008 to submit a Proposed Action.

On January 15, 2008, while it was still a franchised Nissan dealer, Andrew entered into an agreement to transfer its Nissan dealership assets to Melvin Schlesinger, or a company owned and controlled by him. Melvin Schlesinger owns 100% of the voting shares of Andrew; Andrew is a company "owned or controlled" by Melvin Schlesinger. Andrew Schlesinger and Melvin Schlesinger (father and son) have, over the years, managed and operated Andrew's Nissan dealership. On the same day, Andrew notified Nissan of this proposed action pursuant to Wis. Stat. § 218.0134(2)(a). On February 29, 2008, Nissan served Andrew with a written notice of disapproval of the proposed action pursuant to Wis. Stat. § 218.0134(2)(b). Nissan disapproved of the proposed transfer for a number of reasons, including that it was a sham transaction that did not qualify as a "Proposed Action" under the Settlement Agreement.

On March 10, 2008, Andrew commenced another administrative action, *Andrew Chevrolet, Inc. d/b/a Andrew Nissan v. Nissan North America, Inc.*, Case No. TR-08-0010 (Wis. DHA). Andrew seeks an order from the DHA that "there is not good cause for not permitting the Proposed Action to be undertaken."

On June 8, 2008, Nissan moved to stay the DHA Action on the ground that the DHA lacks jurisdiction to decide whether, under the Settlement Agreement, Andrew waived its right to seek relief under Wis. Stat. § 218.0134(2)(c) in the DHA. On July 8, Nissan commenced the instant lawsuit in federal court. On July 10, Nissan filed a motion to stay the

-3-

DHA Action pending the outcome in this federal lawsuit.  On October 3, Andrew moved to dismiss or stay the instant federal action.  On October 27, the DHA denied Nissan's motion for a stay.

**ANALYSIS**

Andrew argues that the Court should abstain from deciding this matter in deference to the ongoing DHA Action.  A motion to dismiss or stay based on an abstention doctrine implicates the Court's exercise of subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  The Court may consider extrinsic materials, including the filings in the DHA Action, without converting this motion into one for summary judgment.  *See English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993).

*Wilton/Brillhart* **or** *Colorado River*?

Andrew's motion cites *Colorado River* abstention.  *See Colo. River Conservation Dist. v. United States*, 424 U.S. 800 (1976).  Under *Colorado River*, where a concurrent state proceeding is pending, a district court may abstain from exercising jurisdiction if the circumstances are exceptional and if abstention would promote "'wise judicial administration.'" *Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) (quoting *Colorado River*, 424 U.S. at 818).  *Colorado River* abstention is the exception, not the rule, as the doctrine makes clear that district courts have a "virtually unflagging duty" to exercise federal jurisdiction when it exists.  *Colorado River* at 817.

*Colorado River* does not necessarily apply in the instant case because Nissan pursues declaratory relief.  *Colorado River* is applied differently (or not at all) when a federal

-4-

declaratory judgment action is filed during the pendency of a state court action. *See Wilton*, 515 U.S. at 289-90; *Brillhart*, 316 U.S. at 494-95. "Both *Colorado River* and *Brillhart* permit federal courts to defer to concurrent state court adjudication, but *Brillhart* sets federal declaratory judgment actions apart as a unique subset." *United Artists Theatre Circuit, Inc. v. F.C.C.*, 147 F. Supp. 2d 965, 977 (D. Ariz. 2000). This is due, in part, to the permissive nature of the federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), which provides that a federal district court "*may* declare the rights and other legal relations of any interested party" in a case falling within its jurisdiction. *See, e.g., Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (the Act "only gives the federal courts the competence to make a declaration of rights; it does not impose a duty to do so").

Accordingly, in contrast to the more demanding "exceptional circumstances" test contemplated by *Colorado River*, district courts have broad discretion to abstain under *Wilton/Brillhart*. *See Wilton*, 515 U.S. at 288 ("In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration"). However, there is a further complication because Nissan alleges a breach of contract claim for damages in addition to its request for declaratory relief. Because the complaint states both declaratory and coercive claims, the Court must determine "whether *Colorado River*'s 'exceptional circumstances' standard gives way to *Wilton*'s discretionary one." *See Coltec Industries, Inc. et al. v. Continental Ins. Co.*, No. Civ. A. 04-5718, 2005 WL 1126951 at *2 (E.D. Pa.).

-5-

Although this is an unsettled question in the Seventh Circuit, courts generally follow three different approaches when faced with this issue. The first approach finds that the *Wilton/Brillhart* discretionary standard is "*per se* supplanted by the harsher *Colorado River* test whenever an action includes both declaratory and non-frivolous coercive claims." *Lexington Ins. Co. v. Rolison*, 434 F. Supp. 2d 1228, 1236 (S.D. Ala. 2006) (citing *Kelly Investment, Inc. v. Continental Common Corp.*, 315 F.3d 494, 497 n.4 (5th Cir. 2003)). The Court finds little merit in this approach. A *per se* rule makes it far too easy for creative litigants to evade *Wilton/Brillhart* by adding a claim for damages or injunctive relief to their pleadings. Courts are afforded considerable latitude in determining the appropriateness of issuing a declaratory judgment. "To eradicate that discretion simply because a coercive claim has been tacked onto what is, at its core, a declaratory judgment action would be to jettison those same considerations of practicality and wise administration, to exalt form over substance, to marginalize *Wilton*, and to undermine the statutory scheme established by Congress." *Rolison*, 434 F. Supp. 2d at 1237.[1]

The second approach counsels that the exercise of jurisdiction is subject only to *Colorado River* "if the coercive claims can exist independently of requests for declaratory relief, such that they could persist and survive even if the declaratory claims vanished." *Rolison* at 1236 (citing *United National Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001)). At least in the Ninth Circuit, this approach asks "whether the claim for

---

[1] Similarly, a *per se* rule in the opposite direction – one automatically in favor of *Wilton/Brillhart* at the expense of *Colorado River* when there is a claim for declaratory relief – would encourage creative and evasive pleading tactics at the expense of the Court's unflagging duty to exercise its own jurisdiction. *See Rolison* at 1237 n.13.

-6-

monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed. In other words, the district court should consider whether it has subject matter jurisdiction over the monetary claim alone, and if so, whether that claim must be joined with one for declaratory relief." *R & D Latex Corp.*, 242 F.3d at 1113. Once again, this approach is too inflexible, and it runs up against the aforementioned concerns regarding creative pleading. Simply because a coercive claim may stand on its own does not mean that it should be used to subvert the discretion afforded by *Wilton/Brillhart*. *See, e.g., Coltec* at *3 (first two approaches should be rejected because they can "compel district courts to duplicate parallel state proceedings").

The third approach, which the Court will apply in the instant case, looks to the "'heart of the action' to determine if the standard of *Wilton* or that of *Colorado River* should apply." *Rolison* at 1236. "[I]f the outcome of the coercive claims hinges on the outcome of the declaratory ones, *Wilton*'s standard governs; conversely, if the opposite applies, *Colorado River*'s standard controls." *Id.* at 1236-37 (quoting *Coltec* at *2). This approach is flexible, as it "allows district courts to treat different cases differently based on the fundamental character of a particular action." *Rolison* at 1238. Without a flexible approach, "peripheral monetary claims could deprive district courts of the discretion granted them by the Declaratory Judgment Act to hear or not to hear what are fundamentally declaratory judgment actions, [rendering] federal courts virtually powerless (save for the rare case in

-7-

which *Colorado River* abstention is warranted) to avert wasteful, duplicative declaratory litigation . . ." *Id.*[2]

Applying the "heart of the action" approach, Nissan's federal complaint alleges four causes of action: (1) sham transaction (declaratory judgment); (2) alter ego (declaratory judgment); (3) breach of duty of good faith and fair dealing (declaratory judgment); and (4) breach of contract. The first three claims ultimately seek the same relief: a declaration that the Asset Purchase Agreement ("APA") between Andrew and Melvin Schlesinger is not a valid "Proposed Action" under the Settlement Agreement, such that Nissan's denial of the Proposed Action does not give Andrew the right to seek a good cause determination before the DHA. Only the fourth claim seeks monetary relief. It alleges that Andrew breached the Settlement Agreement by commencing the second (currently pending) DHA Action, and that Andrew's "breach of contract is the direct and proximate cause of damages to Nissan related to its defense of the Second DHA Action and other damages in an amount to be proved at trial." (Compl., ¶ 42).

The outcome of Nissan's coercive breach of contract claim hinges on the Court's adjudication of Nissan's claims for declaratory relief. If the Court were to declare that the APA is a valid proposed action under the Settlement Agreement, Nissan's breach of contract claim would necessarily fail. Quite clearly, the heart of this action is Nissan's claim for

---

[2] Interestingly, a recent decision from the Eighth Circuit distinguished *R & D Latex Corp.* (representing the Ninth Circuit's "independence" approach). *See Royal Indemnity Co. v. Apex Oil Co.*, 511 F.3d 788 (8th Cir. 2008). In doing so, the Eighth Circuit seemed to apply the "heart of the action" approach when it reasoned that if the district court "were to reject [plaintiff's] claims under the Declaratory Judgment Act, *it could not recover on the claims for contribution, subrogation, unjust enrichment and equitable estoppel. . . .*" *Id.* at 794 (emphasis added). If anything, this demonstrates the confusing nature of this area of the law and the possible conflation of the "independence" and "heart of the action" approaches.

-8-

declaratory relief. Therefore, the discretionary standard in *Wilton/Brillhart* applies to determine whether the Court should abstain in deference to the ongoing DHA Action.[3]

**Abstention under *Wilton/Brillhart***

Under *Wilton/Brillhart*, "the normal principle that federal courts should adjudicate claims within their jurisdiction [yields] to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288. To abstain, the parallel state court proceeding must present "the same issues, not governed by federal law, between the same parties," and the Court must evaluate "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amendable to process in that proceeding . . . " *See Royal Indemnity Co. v. Apex Oil Co.*, 511 F.3d 788, 793 (8th Cir. 2008) (citing *Brillhart*, 316 U.S. at 495); *see also Nationwide Ins. v. Zavalis*, 52 F.3d 689, 692 (7th Cir. 1995) (listing factors). Upon consideration of these factors, a federal court may abstain because "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where" a parallel state court proceeding is pending. *Royal Indemnity* at 793 (quoting *Brillhart* at 495).

The parties to this action and the DHA Action are identical, and the legal issues in both cases are governed exclusively by state law. Nissan's only argument against abstention

---

[3] *See, e.g., ITT Industries, Inc. v. Pacific Empl. Ins. Co.*, 427 F. Supp. 2d 552, 557 (E.D. Pa. 2006) ("cutting through the rhetorical fog of the pleadings . . . the essence of the dispute concerns the scope of the insurance coverage. . . . [T]he outcome of the bad faith and breach of contract claims depends on the resolution of the declaratory judgment claims"); *Coltec* at *3 ("Although [the plaintiffs] also sue for breach of contract and bad faith, the outcome of those claims depends on how we interpret the policies when we resolve the declaratory judgment claim. Unless we decide that the policies oblige [indemnification], their claim for money damages is moot").

-9-

is that this Court must, as a threshold issue, decide whether the APA is a valid proposed action under the parties' Settlement Agreement *before* the DHA can make a "good cause" determination under Wisconsin state law. There is no reason why the DHA cannot make this threshold determination as part and parcel of its "good cause" determination.[4] Moreover, on October 27, the DHA indicated its intention to proceed on this issue, so the Court is well-advised to abstain under *Wilton/Brillhart*. *See* Ruling on Respondent's Motion Seeking a Stay, October 27, 2008 (attached to Andrew's Reply Brief, D. 19). It would be wasteful to proceed parallel to the DHA matter because "ultimately only one of the jurisdictions will actually decide the case. Once one court renders a ruling, the other court will be obliged to halt its proceedings and give res judicata effect to the decision." *Coltec* at *3 (quoting Erwin Chemerinsky, *Federal Jurisdiction* § 14.1, at 839 (4th ed. 2003)).[5] The doctrine of *res judicata* applies with equal force to administrative proceedings. *See, e.g., Alvear-Velez v. Mukasey*, 540 F.3d 672, 677 (7th Cir. 2008) (*res judicata* applies to administrative hearings if the administrative agency is acting in a judicial capacity); *Northgate Motors, Inc. v. General Motors Corp.*, 111 F. Supp. 2d 1071, 1077-78 (E.D. Wis. 2000) (administrative determination by DHA on WMVDL claims given preclusive effect by federal court).

---

[4] As noted by the DHA, to the extent that Nissan seeks a ruling that the APA does not comply with the terms of the Settlement Agreement, this requires "very little, if any, interpretation of the terms of the Settlement Agreement." *See* Ruling on Respondent's Motion Seeking a Stay, October 27, 2008 (attached to Andrew's Reply Brief, D. 19).

[5] Andrew states that a hearing before the DHA is likely to be conducted in early 2009. In the instant case, dispositive motions are due in June, 2009, and a trial is not scheduled until January, 2010. Therefore, it is extremely likely that the DHA Action will dispose of many, if not all, of the issues in this case before the Court would have the opportunity to do the same.

When *Wilton/Brillhart* abstention is appropriate, the best course is to stay rather than dismiss the case "in order to ensure that the federal action can proceed without risk of a time-bar if the state proceeding fails to resolve the matter at issue." *St. Paul Fire & Marine Ins. Co. v. Land Title Services, Inc.*, 483 F. Supp. 2d 745, 751 (E.D. Wis. 2007) (citing *Wilton*, 515 U.S. at 288 n.2). The parties should notify the Court when the DHA Action concludes. If all of the pending issues in this action are resolved by the DHA Action, the Court will enter an order for dismissal. Otherwise, the parties should apprise the Court whether and how the Court should proceed on any unresolved issues.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT** Andrew's motion to stay [D. 16] is **GRANTED**. This matter is **STAYED** pending the outcome of the concurrent DHA Action. All deadlines and the final pretrial and trial dates in this case are cancelled.

Dated at Milwaukee, Wisconsin, this 17th day of December, 2008.

                                      **SO ORDERED,**

                                      *s/ Rudolph T. Randa*
                                      **HON. RUDOLPH T. RANDA**
                                      **Chief Judge**